# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARK ELLIOTT, | Case No.: 2:15-cv-01143-APG-VCF |
| Plaintiff | **Order Granting Defendants' Motions for Summary Judgment** |
| v. | [ECF Nos. 113, 121] |
| THE PRESCOTT COMPANIES, LLC dba PRESCOTT MANAGEMENT and OAKRIDGE INDUSTRIES, INC., | |
| Defendants | |

Plaintiff Mark Elliott sues The Prescott Companies, LLC (Prescott) and Oakridge Industries, Inc. (Oakridge), two companies involved in the resurfacing of the rooftop pool deck of Veer Towers, a high-rise condominium in Las Vegas, Nevada. Elliott resided at Veer Towers while the resurfacing occurred. He claims that the defendants used toxic chemicals that were vented into the nearby air-intake units, resulting in chemical fumes circulating into his residence, causing him various injuries. Elliott brought claims for negligence, gross negligence, negligent infliction of emotional distress, and strict liability.[1]

Oakridge moves for summary judgment on all claims. It argues first that Elliott cannot establish the standard of care element for any of his negligence claims because he has no expert. Oakridge also argues that Elliott has not produced any admissible evidence showing that pool resurfacing is an abnormally dangerous activity to support his strict liability claim. Elliott responds that deposition testimony, product safety information, and expert testimony show a genuine issue of material fact for each of his claims.

---

[1] I previously dismissed Elliott's request for punitive damages. ECF No. 39.

Prescott filed a joinder to Oakridge's motion for summary judgment. In addition to adopting Oakridge's arguments in full, Prescott argues that Elliott cannot establish causation for any of his claims because this requires expert testimony and all of his experts have been stricken. Elliott responds that the motion is not a proper joinder or timely motion for summary judgment, and that his treating physician can testify as to causation.

The parties are familiar with the facts of the case, so I will not repeat them here except where necessary. I grant summary judgment to both defendants.[2] Elliott's negligence claims require an expert to testify as to the standard of care. His standard of care expert has been stricken, and none of his other evidence is sufficient to prove a prima facie case on his negligence claims. Expert testimony is also necessary to prove causation on his claims, and Elliott has not produced adequate evidence of medical expert or treating physician testimony. Finally, Elliott has not produced any admissible evidence supporting his claim for strict liability.

I. **ANALYSIS**

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence

---

[2] As will be discussed further below, although Prescott's motion is not a proper joinder, there is good cause to grant it as a motion to amend the scheduling order and for summary judgment.

of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

A. <u>Oakridge's Motion for Summary Judgment</u>

    1. *Federal Rule of Civil Procedure 56(d)*

Elliott argues summary judgment should be denied under Rule 56(d) so he can depose one of Oakridge's project managers, Chris Eskridge. District courts should deny summary judgment under Rule 56(d) where a summary judgment motion is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *see also Anderson*, 477 U.S. at 250 n.5 (stating summary judgment should be refused "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"). The party requesting that a motion for summary judgment be denied under Rule 56(d) "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

Magistrate Judge Ferenbach granted Oakridge's motion for a protective order to prevent Eskridge's deposition after Elliott's opposition to Oakridge's summary judgment motion. ECF No. 142. Therefore, the non-occurrence of this deposition is not a sufficient reason to deny summary judgment. Moreover, Elliott failed to file an affidavit as required. Therefore, I will not deny Oakridge's motion under Rule 56(d).

### 2. *Negligence Claims*

"[T]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). A claim for gross negligence requires the same showing but "is substantially and appreciably higher in magnitude and more culpable than ordinary negligence." *Hart v. Kline*, 116 P.2d 672, 674 (Nev. 1941) (quotation omitted). "Gross negligence is equivalent to the failure to exercise even a slight degree of care." *Id.* Finally, to establish a claim for negligent infliction of emotional distress, the plaintiff must show "the defendant acted negligently . . . and either a physical impact . . . or, in the absence of physical impact proof of serious emotional distress causing physical injury or illness." *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (quotations omitted).

Oakridge argues Elliott cannot prevail on his negligence claims because he cannot establish the standard of care due or that it was breached. Oakridge contends Elliott's only expert designated to testify as to standard of care should not be allowed to do so, and that without this expert, this element cannot be established because pool deck resurfacing work is not within a layman's knowledge. Elliott responds that he has produced sufficient evidence to raise a genuine dispute, including expert and deposition testimony.

After Oakridge filed its motion, Magistrate Judge Ferenbach struck all of Elliott's expert witnesses and denied reconsideration. ECF Nos. 118; 140. Thus, Elliott does not have any expert testimony as to standard of care. "It is well settled that the standard of care must be determined by expert testimony unless the conduct involved is within the common knowledge of laypersons." *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982). Where "the service rendered does not involve esoteric knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of performance." *Id.*

Elliott claims that Oakridge did not take any safety measures in its pool deck resurfacing work. However, the safety measures necessary when working with pool deck resurfacing chemicals such as "poly-crete SLB," "cryl-a-glaze G-201," and "perkadox CH-50" are not within the common knowledge of laymen. *See* ECF Nos. 125-1; 125-2; 125-3. The standard of care for using these chemicals when resurfacing a pool on a roof deck is not "within the range of ordinary experience and comprehension." *Pontikis v. Coleman-Toll, LLC*, Nos. 65838, 65945, 66514, 2015 WL 6739075, at *2 (Nev. Ct. App. Oct. 22, 2015) (finding expert testimony necessary to establish the standard of care for the development, grading, and construction of property). Therefore, expert testimony is required to establish the appropriate standard of care. Elliott has no expert, so he cannot establish the standard of care

To the extent that Elliott offers the material safety data sheets (MSDS) for these chemicals as evidence of the appropriate standard of care, they are inadmissible. The MSDS include manufacturer statements about uses, characteristics, and health and safety measures. *See, e.g.*, ECF No. 125-1. These documents are out-of-court statements by the manufacturer, and if offered for their truth, are inadmissible hearsay. *In re C.R. Bard, Inc.,* 810 F.3d 913, 923–25 (4th

Cir. 2016). Elliott has not argued that he will be able to offer the information included in the MSDS in any admissible manner for trial.

Elliott also argues that deposition testimony he developed is sufficient to raise a genuine dispute as to standard of care. He points to the testimony of the Veers Tower concierge and facilities director about the actions they took after being notified of an odor in the building. This testimony is irrelevant to determining Oakridge's standard of care. Moreover, Elliott does not argue either individual is qualified to opine on the applicable standard of care.

Because Elliott has no expert testimony as to the requisite standard of care, he cannot prove a material element of his claim. Therefore, I grant Oakridge summary judgment on Elliott's negligence claims.

3. *Strict Liability*

Under Nevada law, "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Valentine v. Pioneer Chlor Alkali Co.*, 864 P.2d 295, 297 (Nev. 1993) (per curiam) (quoting Restatement (Second) of Torts § 519 (1977)). There are six factors I consider to determine whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.* I am not to "look at the abstract propensities or properties of the particular substance involved, but must analyze the defendant's activity as a whole." *Id.* at 298.

Oakridge contends that Elliott is unable to establish his prima facie case that pool deck resurfacing is an abnormally dangerous activity because there is no evidence establishing any of these factors. Elliott does not offer any evidence in response, only repeating his allegations as to what occurred. He does not cite to any admissible or relevant evidence supporting a finding of any of the factors that would establish the abnormally dangerous activity element of his strict liability claim. Elliott has not shown there is a genuine issue of material fact as to whether pool deck resurfacing is an abnormally dangerous activity. Therefore, I grant Oakridge summary judgment on Elliott's strict liability claim.

B. Prescott's Joinder

   *1. Procedural Issues*

Prescott filed what it termed a "joinder" to Oakridge's motion for summary judgment on January 9, 2018, three weeks after Oakridge filed its motion and the deadline for dispositive motions. Prescott adopts Oakridge's arguments, but adds an argument regarding causation based on Magistrate Judge Ferenbach striking all of Elliott's experts on January 4, 2018. *See* ECF No. 118. Elliott opposes the motion both as a joinder and as a motion for summary judgment. He argues that no matter what the motion is, it is untimely. He also disputes the merits of the motion should it be treated as a motion for summary judgment.

Elliott's timeliness argument for the "joinder" is based on state rules of practice, which are inapplicable here. However, joinder in a motion generally means adopting the arguments of that motion in full, not advancing new and different arguments. Therefore, Prescott's motion is not a proper joinder. And to the extent it is a new motion for summary judgment, it is untimely because it was filed three weeks after the dispositive motion deadline.

I construe the joinder as a motion to amend the scheduling order to allow for later filing of dispositive motions. Where a party seeks to file a motion after expiration of the scheduling order's deadline, the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609. Whether to modify the scheduling order's deadline lies in my discretion. *United States v. Dang*, 488 F.3d 1135, 1142–43 (9th Cir. 2007).

The new argument Prescott advances is based on Elliott's experts being stricken. The order striking all of Elliott's experts was filed on January 4, and Prescott filed its motion five days later. Prescott could not have made this argument before Magistrate Judge Ferenbach's order. Therefore, I find that Prescott was diligent in filing its motion and good cause exists to modify the scheduling order and consider the motion on the merits.

    2. *Merits*

Elliott alleges toxic fumes from the chemicals used in the pool deck resurfacing were vented into his apartment and caused him various injuries. Neither Elliott nor the defendants ever directly state what these injuries were, but a stricken medical expert report discusses coughing, shortness of breath, confusion, aggravation of pre-existing asthma, "various pulmonary crises," "respiratory distress," and possible cognitive issues. ECF No. 125-8 at 2. Prescott contends that Elliott cannot prove causation for any of his claims because expert testimony is required. In response, Elliott generally outlines his theory of the case, and contends his treating physician will testify as to causation.

When "the cause of injuries is not immediately apparent, the opinion as to the cause should be given by one qualified as a medical expert." *Lord v. State*, 806 P.2d 548, 551 (Nev. 1991); *see also Layton v. Yankee Caithness Joint Venture, L.P.*, 774 F. Supp. 576, 580 (D. Nev. 1991) (stating that "where a question of fact is beyond the comprehension of the ordinary lay person, expert testimony is required to prove that fact"). In *Layton*, the court held that expert testimony was required to prove the causal relationship between chemical emissions and headaches, nosebleeds, dizziness and eye irritation, because those injuries "may have many causes." *Layton* 774 F. Supp. at 580.

Here, as in *Layton*, the causal relationship between pool deck resurfacing chemicals and Elliott's alleged injuries is not immediately apparent or within the comprehension of the ordinary layperson. As such, expert testimony is required to prove causation. Dr. Watt, Elliott's only medical expert, has been stricken. Therefore, Elliott cannot prove causation for any of his claims.

Elliott argues that even though Watt was stricken as an expert, he can testify as Elliott's treating physician, and that Watt diagnosed him with post-traumatic stress disorder (PTSD) caused by chemical exposure. Even if Watt could testify as a treating physician, Elliott offers no evidence that Watt actually treated him. Although Elliott offers only an unsupported claim in his response to Prescott, in his response to Oakridge's motion Elliott cites to Watt's expert report to support his claim about PTSD treatment. *See* ECF No. 125-8. However, that report says nothing about PTSD. In addition, Elliott does not argue that Watt treated him for any of his claimed physical injuries. Therefore, Elliott has not produced evidence showing a genuine issue of material fact as to causation. I grant Prescott summary judgment on all of Elliott's claims.

/ / / /

9

## II. CONCLUSION

IT IS THEREFORE ORDERED that defendant Oakridge Industries, Inc.'s motion for summary judgment **(ECF No. 113) is GRANTED.**

IT IS FURTHER ORDERED that defendant The Prescott Companies, LLC's motion for summary judgment **(ECF No. 121) is GRANTED.**

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of defendants Oakridge Industries, Inc. and The Prescott Companies, LLC and against plaintiff Mark Elliott and close this case.

DATED this 6th day of August, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE